**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Yesenia Galvan, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-3854 |
| | ) | |
| v. | ) | Judge Georgia N. Alexakis |
| | ) | |
| City of Chicago, Deputy Chief Adnardo | ) | |
| Gutierrez, Sgt. Anthony R. Strazzante, | ) | |
| Sgt. James Kurth and Commander | ) | |
| Melvin W. Branch, | ) | |
| | ) | |
| Defendants. | ) | |

## Second Amended Complaint

NOW COMES Plaintiff Yesenia Galvan, by and through her undersigned counsel, James C. Vlahakis of Vlahakis Law Group LLC, and submits the following as her Second Amended Civil Rights Complaint against Defendants City of Chicago, Deputy Chief Adnardo Gutierrez, Sgt. James Kurth, Sgt. Anthony R. Strazzante, and Commander Melvin W. Branch, for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"), including retaliation for Plaintiff engaging in protected activity, and gender based harassment:

### I. Parties, Jurisdiction and Venue

1.    Plaintiff Yesenia Galvan ("Plaintiff") is a citizen of the State of Illinois and is domiciled in the State of Illinois.

2.    Plaintiff is employed as a Patrol Officer with the Chicago Police Department and was hired by the Department in December of 2018.

3.    Defendant City of Chicago is a municipal entity responsible for the oversight and administration of the Chicago Police Department.

1

4.    Defendant Deputy Chief Adnardo Gutierrez is employed by the City of Chicago, and he is being sued in his individual capacity.

5.    Defendant Sgt. Anthony R. Strazzante is employed by the City of Chicago, and he is being sued in his individual capacity.

6.    Defendant Sgt. James Kurth is employed by the City of Chicago, and he is being sued in his individual capacity.

7.    Defendant Commander Melvin W. Branch is employed by the City of Chicago, and he is being sued in his individual capacity.

8.    Plaintiff asserts that Defendants violated her civil rights based upon her sex (female) and that Defendants engaged in various actions in retaliation for Plaintiff complaining about how she was mistreated based upon her sex.

9.    Plaintiff engaged in protected activity on January 25, 2024, by reporting the sex and gender discrimination mistreatment and harassment that she suffered to the Equal Employment Opportunity Commission.

10.    Plaintiff's Charge of Discrimination (440-2024-03684) was transmitted to, Maria Vuolo-Milan, Chicago Assistant Corporation Counsel for the City of Chicago.

11.    After Defendants became aware of the fact that Plaintiff had reported the discrimination that she suffered to the EEOC, Defendants retaliated against Plaintiff by subjecting her to further mistreatment and harassment because of her sex and gender.

12.    Further, in this Civil Rights Complaint, Plaintiff also asserts that Defendants violated Title VII by retaliating against her for complaining about sex discrimination, and in particular, retaliating against her after she file a Charge of Discrimination with the EEOC.

13.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 by way of Title VII and 42 U.S.C. § 1983. Further, pursuant to 28 U.S.C. § 1367,

Supplemental jurisdiction exists with regard to Plaintiff's claims that certain Defendants violated the Illinois Whistleblower Act, 740 ILCS 174/15(b).

14.     Venue is proper in this District because Plaintiff was employed in this Judicial District and suffered discrimination and retaliation within this Judicial District.

15.     In addition to Plaintiff residing in this Judicial District, upon in formation and belief, each of the individual Defendants residents in this Judicial District.

**II. Exhaustion of Administrative Remedies**

16.     Plaintiff digitally signed a timely Charge of Discrimination on February 7, 2024, as Charge No. 440-2024-03684.

17.     As to Charge No. 440-2024-03684, Plaintiff received a Determination and Notice of Rights letter from the EEOC (hereafter a "Right to Sue Letter") dated February 11, 2024.

18.     The original Civil Rights Complaint was filed on May 10, 2024. Accordingly, this lawsuit was timely filed.

**III. Additional Allegations**

19.     In September of 2023, Plaintiff was assigned/detailed to Area 4, Unit 214 of the 11th Police District.

20.     In or around late September or early October of 2023, Police Officer Gladys De Leon was involved in a verbal altercation with Police Officer Reyna [last name unknown].

21.     Deputy Chief Gutierrez convened a meeting with certain employees from Unit 214 (including Plaintiff) and certain employees of members from the 11th District to discuss the incident involving Police Officer De Leon and Police Officer Reyna.

22.     Commander Davina F. Ward from the 11th District also attended this meeting.

3

23. During the meeting, Deputy Chief Gutierrez asked those in attendance for their opinions regarding the incident involving Police Officer De Leon Police Officer Reyna (where Officer Reyna was not at the meeting). In particular, Deputy Chief Gutierrez asked those in attendance to discuss the ongoing issues involving female patrol officers working for Unit 214 and the 11th District.

24. In Plaintiff's experience in working with Deputy Chief Gutierrez, he never conveyed a meeting to discuss ongoing issues involving *male* patrol officers working for Unit 214 and the 11th District.

25. When Deputy Chief Gutierrez asked Plaintiff for her opinion, she responded by saying "I do not have problem with either side and that I look forward to working with everyone." She also said, "I'm not exactly sure what is going on but that maybe it was some miscommunication."

26. As discussed below, Plaintiff was ostracized for failing to side with either of the two female officers involved in the verbal altercation – where the verbal altercation involved ongoing issues between female patrol officers working for Unit 214 and the 11th District.

27. Shortly after the above meeting took place, in early October of 2023, Plaintiff overheard Police Officer Ramona Robles telling a sergeant that she did not want to train Plaintiff to be trained for time-keeping purposes because she did not want Plaintiff "in my shit."

28. Because of what Police Officer Robles, Plaintiff was never trained to in time-keeping.

29. In late October or early November of 2023, Police Officer Gladys De Leon walked up to Plaintiff in a physically threatening manner and slammed papers on Plaintiff's desk.

4

30.     The manner in which Officer De Leon approached Plaintiff caused Plaintiff to believe that Officer De Leon was going to strike her.

31.     Immediately after Officer De Leon slammed the papers on Plaintiff's desk, she told Plaintiff, "this was due at the beginning of the period!"

32.     Officer Officer De Leon was referring to the monthly Sgt. Management Requests when she made the above statement.

33.     When Plaintiff complained of the above mistreatment to Deputy Chief Gutierrez, he criticized Plaintiff for being "soft for letting a bunch of girls get to her" and indicated that she needed to act *more like a man*.  As detailed below, Deputy Chief Gutierrez did not criticize male officers who complained about being mistreated by their male coworkers - because Deputy Chief Gutierrez incorrectly believed that interpersonal complaints raised by female officers were a waste of his time.

34.     Deputy Chief Gutierrez did not reprimand any of the employees who mistreated Plaintiff where he felt that their mistreatment of Plaintiff was not a concern to him.

35.     In mid to late December of 2023, Lt. Nicholas Duckhorn informed Plaintiff that he was assigning Police Officer Sylvia Rodriguez to observe Plaintiff at work.

36.     When Plaintiff asked Lt. Duckhorn why Police Officer Rodriguez was observing her and what role Rodriguez would be tasked with, Duckhorn responded that Rodriguez would not be performing any tasks, *other than observing Plaintiff work*.

37.     Lt. Duckhorn did not assign male officers to observe other male officers.

38.     In December of 2023, work related stress (that was exacerbated as a result of Deputy Chief Gutierrez ignoring Plaintiff's complaints) caused Plaintiff to suffer from stress, anxiety, sleep issues and weight loss.

39.     As a result of these work-related conditions, Plaintiff went to a medical professional and received a health screening. The results of the health screen were not favorable, and this added to Plaintiff's work-related stress.

40.     In or about January 3, 2024, as a result of work-related stress and the results of Plaintiff's health screening, she asked to transfer from Unit 214, where her formal requests identified her long commute time and childcare issues.

41.     Plaintiff's commute was being impacted by her assignment to Unit 214 – where the location of Unit 214 from her home resulted in a one-hour drive to work and an approximately one-hour and fifteen-minute drive home. These commute times negatively impacted the time Plaintiff could spend with your young child.

42.     While Plaintiff's commute and childcare issues were truly impacting her, she was too afraid to identify the *main reason* she wanted a transfer from Unit 214 – which were to avoid being harassed by female police officers – where it was clear to her that Deputy Chief Gutierrez was unwilling to intervene.

43.     As noted above, Plaintiff she felt ostracized and harassed by other police department employees after she refused to take sides relative to the verbal altercation involving Officers De Leon and Reyna – where the verbal altercation involved issues involving female patrol officers working for Unit 214 and the 11th District.

44.     On January 13, 2024, Plaintiff attended an office get-together at which time Officer Robles told Plaintiff that she was unhappy with her remaining neutral over the prior incident involving Officers De Leon and Reyna - where the verbal altercation involved issues involving female patrol officers working for Unit 214 and the 11th District

45.     Because Plaintiff had remained neutral, Office Robles informed Plaintiff that she told Deputy Chief Adnardo Gutierrez that Plaintiff "gotta go" – meaning that Officer Robles wanted Plaintiff transferred to a different Unit.

46.     During this conversation, Officer Robles also told Plaintiff that Deputy Chief Gutierrez had told Officer Robles that "maybe this will teach [Plaintiff] who side her loyalty is with."

47.     In response to what Robles said, Plaintiff asked Robles why she was upset with her for remaining neutral.

48.     Police Officer De Leon overheard Plaintiff's question and told Plaintiff, "If you're neutral, you're against us".

49.     In response to Plaintiff's question, Officer Robles told Plaintiff that she was surprised that she "had lasted this long". Officer Robles also taunted Plaintiff and asked her if she was "going to quit."

50.     As a result of the above acts of mistreatment and above-quoted conversations, Plaintiff started to look for a different position with a different unit.

51.     Further, as discussed below, when Plaintiff complained to Deputy Chief Gutierrez about the above treatment, he ignored her complaints because she was a woman, and he further criticized Plaintiff for being "soft for letting a bunch of girls get to her" and indicated that she needed to act *more like a man.*

52.     In saying this, Deputy Chief Gutierrez treated Plaintiff worse that similarly situated male police officers who were dragged into office politics – where he did not get upset and tell male officers that they were soft for letting male officers get to them.

53.     As detailed in Paragraphs 79-82, in contrast to how Deputy Chief Gutierrez treated Plaintiff, he did not ridicule or berate male officers who asked for transfers to avoid office politics.

54.     On January 23, 2024, Plaintiff met with Sergeant James Kurth to report to him that she felt she was being ostracized at work as a result of her not taking a side between the ongoing dispute involving Officers Robles and De Leon.

55.    During this conversation, Plaintiff told Sergeant Kurth that she was being ostracized and harassed by female members of her unit as a result of her taking a neutral position relative to the verbal dispute involving Officers Robles and De Leon.

56.    After Plaintiff discussed the above issues with Sergeant Kurth, she had a telephone conversation with Lt. Duckhorn and explained to him that she was being ostracized and harassed by female members of her unit as a result of her taking a neutral position relative to the verbal dispute involving Officers Robles and De Leon.

57.    On January 23, 2024, Plaintiff also spoke face-to-face with Deputy Chief Gutierrez and told him she was being ostracized and harassed by female members of her unit as a result of her taking a neutral position relative to the verbal dispute involving Officers Robles and De Leon.

58.    Plaintiff detailed the conversation that she had on January 13, 2024, with Officers Robles and De Leon where they both told her that they were unhappy with her remaining neutral about the verbal incident involving Officers De Leon and Reyna.

59.    Deputy Chief Gutierrez downplayed Plaintiff's concerns and sarcastically stated that this is just what happens in an all women environment and that Plaintiff should get used to it.

60.    Deputy Chief Gutierrez then said, "are you going to let them win?" in a tone that suggested that he was attempting to cause a negative reaction from Plaintiff.

61.    Plaintiff responded by saying, "I just want to remain professional."

62.    Deputy Chief Gutierrez told Plaintiff that he was disappointed that she had allowed the comments of Officers Robles and De Leon to "get to you".

63.    Near the end of this conversation, Plaintiff asked Deputy Chief Gutierrez if she could transfer to the 007th District to get away from the harassment she was facing.

8

64. Deputy Chief Gutierrez agreed to Plaintiff's transfer request.

65. Thereafter, on January 23, 2024, Plaintiff prepared a letter documenting her transfer request and Deputy Chief Gutierrez signed Plaintiff's transfer request under the word "APPROVED".

87. Below is a true and accurate image of the January 23, 2024, transfer request that was *physically signed* by Defendant Deputy Chief Adnardo Gutierrez:



Bureau of Patrol
Area Four

23 January 2024

TO:     Adnardo Gutierrez
        Deputy Chief
        Bureau of Patrol- Area Four

FROM:   Yesenia Galvan #4043
        Police Officer
        Area Four-214

SUBJECT:  **Detail to 007th District**

R/O is requesting to end her detail with Area Four-214 effective the 2nd period and return to Area One, 007th District. R/O is willing to change day off group and hours to meet operational needs. R/O appreciates any consideration to this matter.

Yesenia Galvan
Police Officer
Area Four 214

APPROVED:

Adnardo Gutierrez
Deputy Chief
Bureau of Patrol-Area Four

Acting Chief
Bureau of Patrol

9

66. The above document was *physically signed* by Defendant Deputy Chief Adnardo Gutierrez in front of Defendant James Kurth.

67. Despite granting Plaintiff's transfer request, on January 25, 2024, Deputy Chief Gutierrez convened a staff meeting at which time he told everyone in attendance that Plaintiff should never have complained to that she was being harassed and ostracized as a result of her taking a neutral position in the dispute between Officers Robles and De Leon.

68. Further, Deputy Chief Guttierez rescinded Plaintiff's request to transfer to the 007th District and dismissively called Plaintiff "soft" for seeking an assignment. In making this statement, Deputy Chief Guttierez implied that Plaintiff was being "soft" because she was a woman.

69. As detailed in Paragraphs 79-82, Deputy Chief Gutierrez did not treat similarly situated male officers in a similar manner, where he allowed males officers to transfer to different districts when they had to deal with personality conflicts with other male officers under Gutierrez's command.

70. After this meeting concluded, Plaintiff was asked to visit Deputy Chief Gutierrez in his office. When Plaintiff met with Deputy Chief Gutierrez, he yelled at her for signing his name to the cover letter that Plaintiff had prepared to transmit the transfer approval order that Deputy Chief Gutierrez had signed with his own hand.

71. Plaintiff was confused why Deputy Chief Gutierrez was yelling at her, because it was commonplace for her department and unit to sign certain documents on behalf of superiors – once the superior had authorized the employee to sign his or her name.

72. Plaintiff merely signed Deputy Chief Gutierrez's name on a *cover letter* with his implied permission – because Deputy Chief Gutierrez had already signed his name

10

to Plaintiff's transfer letter – where his signature effectively granted the relief that Plaintiff sought.

73.     Deputy Chief Gutierrez also put Plaintiff down by telling her that she was "soft for letting the girls get to you" and told her that her complaint about being harassed and ostracized never should have gotten to him.

74.     Again, as detailed in Paragraphs 79-82, Deputy Chief Gutierrez did not treat similarly situated male officers in a similar manner, where he allowed males officers to transfer to different districts when they had to deal with personality conflicts with other male officers under Gutierrez's command.

75.     Deputy Chief Gutierrez angrily concluded the January 25, 2024, meeting by telling Plaintiff that he had rescinded her transfer to the 007th District.

76.     Plaintiff was devastated to hear this news, as she found that the ostracization and harassment she had suffered was intolerable.

77.     Desperate to obtain a transfer to another District, Plaintiff asked Deputy Chief Gutierrez if she could be transferred to the 003rd District – despite knowing that this transfer would cause her to lose her administrative position and possibly return to patrol work in a high-crime area.

78.     Deputy Chief Gutierrez agreed to transfer Plaintiff to the 003rd District, but in agreeing to Plaintiff's request, he again castigated her for being "soft for letting a bunch of girls get to her" and indicated that she needed to act *more like a man*.

79.     Deputy Chief Gutierrez treated Plaintiff *worse* that similarly situated male police officers who have been dragged into office politics who then requested transfers. For example, Deputy Chief Gutierrez agreed to a transfer request initiated by Sgt. Mario Uribe, where Sgt. Uribe sought a transfer from Unit 214 after he had encountered certain personality conflicts with Lt. Duckorn and Deputy Chief Gutierrez.

11

80. In contrast to how Deputy Chief Gutierrez treated Plaintiff, he did not denigrate Sgt. Uribe for seeking a transfer on or about January 3, 2024.

81. Additionally, Police Officer David Morales successfully obtained a transfer from Unit 214 after he encountered certain personality conflicts with Lt. Duckorn and Deputy Chief Gutierrez.

82. In contrast to how Deputy Chief Gutierrez treated Plaintiff, he did not denigrate Officer Morales for seeking a transfer on or about January 18, 2024.

83. Deputy Chief Guitierrez's comments and actions were discriminatory in nature – where he was treating Plaintiff differently because of her gender and the manner in which she responded to her tormentors. As discussed below i, in contrast to how he treated male officers who sought and obtained transfers to avoid office politics, Deputy Chief Gutierrez caused Plaintiff to be transferred to a less desirable shift.

84. When Plaintiff returned to her home at the end of her shift on January 25, 2024, she filed a charge of sex and gender discrimination with the Equal Employment Opportunity Commission ("EEOC") as Charge No. 440-2024-03684.

85. As noted above, prior to returning to the 3rd District, Plaintiff was told that she would be assigned to the second watch upon her transfer to the 007th District.

86. However, in retaliation for Plaintiff complaining about sex discrimination, Plaintiff learned that Defendant Commander Melvin Branch and/or Defendant Sgt. James Kurth (at the direction of Deputy Chief Gutierrez or someone designated by him) assigned Plaintiff to third watch as a form of punishment for complaining about how other officers in her prior unit had been ostracizing and harassing her.

87. Plaintiff returned to the 3rd District effective February 1, 2024.

88. After returning to the 003rd District, Plaintiff's workhours were changed – where she was reassigned from the second watch (which involved working from 6:00 am

to 2:30 pm or from 7:00 a.m. to 3:30 pm) to the third watch - which involved working from 1:00 to 10:30 pm – *a less desirable time period.*

89.     This retaliatory transfer was initiated in response to Plaintiff complaining about workplace harassment, filing a charge of sex and gender discrimination with the EEOC (on January 25, 2024) and because she initiated internal affairs investigations in February of 2024, where she complained of sex and gender discrimination, along with retaliation for complaining about how she was being treated by her fellow officers and superiors.

90.     The third watch is a less desirable time-slot because it resulted in Plaintiff being unable to see her young child during the daytime hours. The third watch is also a more dangerous timeslot given that takes place during the evening hours.

91.     Transfer to a less desirable shift constitutes a "change ... that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016) (internal quotation marks omitted).

92.     This unlawful and retaliatory transfer was initiated by Commander Melvin W. Branch, *at the direction of Deputy Chief Adnardo Gutierrez.*

93.     Further, on or about February 2, 2024, Sgt. Kurth, in conjunction with Deputy Chief Adnardo Gutierrez and Daniel O'Brien (a so-called Police Legal Office II") initiated a bogus Internal Affairs investigation (Log No. 2024-0002186) against Plaintiff where Kurth *falsely* claimed that Plaintiff had "forged Deputy Chief Adnardo Gutierrez's signature to a To-From Subject Report on her own 'Detail Request', without permission to do so."

94.     To the contrary, this was a *false charge* because Plaintiff was given permission to sign Defendant Deputy Chief Adnardo Gutierrez's name to the To-From

13

Subject Report where Defendant Gutierrez had actually approved *and physically signed* the Detail Request which authorized Plaintiff's transfer.

95.     Below is a true and accurate image of the "To-From" memo that accompanied the original transfer request that Deputy Chief Gutierrez had signed (which is depicted in Paragraph 87):



96.     On or about February 2, 2024, Plaintiff filed Log Investigation No. 2024-0002210 to document the discriminatory treatment that she has suffered at the direction of Deputy Chief Gutierrez and Sgt. Kurth.

97.     On or about February 7, 2024, Log Investigation No. 2024-0002383 was opened by Plaintiff to document that she had been assigned to the third watch after she had complained (in Log Investigation No. 2024-0002210) about how Deputy Chief Gutierrez, Sgt. Anthony R. Strazzante and Sgt. Kurth had retaliated against her.

98.     On February 13, 2024, Plaintiff was informed by Sgt. Jasmin Tucker that Deputy Commander Branch told Sgt. Tucker that Plaintiff was being assigned to the third watch in response to Plaintiff's complaints of being targeted by her fellow officers.

99.     Sgt. Tucker also told Plaintiff that Sgt. Kurth had told Sgt. Tucker that Sgt. Kurth was trying to punish Plaintiff for seeking a transfer.

100.    On February 15, 2024, Plaintiff emailed Defendant Strazzante to inform him that she had filed a charge with the EEOC:

**From:** Strazzante, Anthony R. <Anthony.Strazzante@chicagopolice.org>
**Sent:** Thursday, February 15, 2024 4:07:17 PM
**To:** Galvan, Yesenia <Yesenia.Galvan@chicagopolice.org>
**Subject:** Re: EEOCC

Received, thank you.


Sgt. Anthony Strazzante #1896
Bureau of Internal Affairs
Special Investigations Section
(312) 745-6310 Ext. 85057

**From:** Galvan, Yesenia <Yesenia.Galvan@chicagopolice.org>
**Sent:** Thursday, February 15, 2024 3:50 PM
**To:** Strazzante, Anthony R. <Anthony.Strazzante@chicagopolice.org>
**Subject:** Fw: EEOCC

Attached is the EEOCC letter.

**From:** 6870-FrontDesk-1stFl@chicagopolice.org <6870-FrontDesk-1stFl@chicagopolice.org>
**Sent:** Thursday, February 15, 2024 3:52 PM
**To:** Galvan, Yesenia <Yesenia.Galvan@chicagopolice.org>
**Subject:** Attached Image

101.    On March 8, 2024, Sgt. Strazzante interviewed Plaintiff in relation to Log Investigation No. 2024-0002383.

102.    When Sgt. Strazzante interviewed Plaintiff on March 8, 2024, he knew she had filed an EEOC charge (as Charge No. 440-2024-03684), and he was specifically informed of this fact by Plaintiff during their March 8, 2024, interview.

103.    On May 7, 2024, in retaliation for Plaintiff initiating Log Investigation Nos. 2024-0002210 and 2024-0002383, Sgt. Strazzante initiated a bogus Internal Affairs investigation against Plaintiff where he falsely claimed that Plaintiff filed had Log Investigation Nos. 2024-0002210 and 2024-0002383 "in retaliation for department members initiating Log Investigation No. 2024-0002186" against Plaintiff.

104.    Prior to and during the May 21, 2024, interview, Sgt. Strazzante falsely accused Plaintiff of destroying an email that was allegedly related to his prior bogus investigation.   He also falsely accused Plaintiff of forging Defendant Guitierrez's signature to the to-from memo that accompanied his sighed transfer order.

105.    When Sgt. Strazzante interviewed Plaintiff on May 21, 2024, he knew she had filed an EEOC charge and he was specifically informed of this fact by Plaintiff during the May 21, 2024, interview. This interview was the first substantive interview related to Plaintiff's *alleged* forgery. During this interview, Sgt. Strazzante told Plaintiff that she would be prosecuted if she spoke to any other police officers or persons about her claims of discrimination or the EEOC charge. The only exception Sgt. Strazzante provided to Plaintiff was that she could speak with her undersigned attorney. Sgt. Strazzante also accused Plaintiff of initiating a *false* internal affairs report of misconduct on February 2, 2024.

106.    In particular, it was improper for Sgt. Strazzante to accuse Plaintiff of falsely submitting a complaint of discrimination to internal affairs, where his comments

were adversarial in nature, where he suggested that she could be prosecuted for making a false report of discrimination.

107.    Further, on July 23, 2024, in retaliation for the filing of Plaintiff's internal affairs complaints, her EEOC charge, the filing of this lawsuit on May 10, 2024, and Plaintiff's comments during the May 21, 2024, internal affairs interview conducted by Sgt. Strazzante, Plaintiff was stripped of her police powers.

108.    This adverse action resulted in Plaintiff being ordered to turn in her handgun, badge and police-issued hat.

109.    In being stripped of her police powers, Plaintiff has suffered a material adverse consequence where she has been disqualified for earning overtime opportunities, promotions, and bidding for other job openings. *See, e.g., Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 729 (7th Cir. 2020) (where a Sheriff's Office sergeant was placed on paid administrative leave for approximately three months, and he was able to show that he would have worked twice as many hours of overtime compared to what he received in actual pay, his loss of potential additional overtime pay was a materially adverse employment action).

110.    "When overtime pay or premium pay is a significant and expected part of an employee's annual earnings" as is the case here, the deprivation of such additional "pay may constitute an adverse employment action." *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016).

111.    As a result of the discrimination and mistreatment that Plaintiff suffered, she developed seborrheic dermatitis, a skin condition that was diagnosed as being related workplace stress and anxiety.

117.    Plaintiff digitally signed a second timely Charge of Discrimination on November 11, 2024, as Charge No. 440-2024-08008.

118.    As to Charge No. 440-2024-08008, Plaintiff received a Right to Sue Letter from the EEOC dated December 10, 2024, where the EEOC's Right to Sue Letter copied Maria C. Vuolo-Milan, Chief Assistant Corporation Counsel.

119.    Thereafter, on December 14, 2024, Plaintiff received an email from Investigator Lawrence O. Darko, who is employed by the City of Chicago's Bureau of Internal Affairs, in reference to Log No. 2024-0007205. Investigator Darko's email asked Plaintiff to sit for an internal affairs investigation in response to Plaintiff receiving a Right to Sue Letter in relation to Charge No. 440-2024-08008.

120.    There was no legitimate basis for Investigator Darko's request. Rather, Investigator Darko's request was retaliatory in nature and was intended to intimidate Plaintiff from taking further legal action.

## Count I – Violations of Title VII

### Sex and Gender Discrimination and Adverse Treatment

121.    Plaintiff reasserts and realleges Paragraphs 1-120 in this Count as if fully stated.

122.    Through the actions described above, the City of Chicago intentionally discriminated against Plaintiff based upon her sex by subjecting her to discrimination and adverse treatment in the form of a retaliatory transfer for a less favorable job position, as well as subjecting Plaintiff to retaliatory Internal Affairs Complaints.

123.    Defendants treated Plaintiff differently because of her sex, where she was treated adversely where Defendants expect *female* police officers to shake-off and not get involved in office politics – in contrast to Defendants approving of male officers getting involved in office politics.

124.    In particular, Deputy Chief Gutierrez treated Plaintiff *worse* that similarly situated male police officers who have been dragged into office politics who then

requested transfers. For example, Deputy Chief Gutierrez agreed to a transfer request initiated by Sgt. Mario Uribe, where Sgt. Uribe sought a transfer from Unit 214 after he had encountered certain personality conflicts with Lt. Duckorn and Deputy Chief Gutierrez.

125.   In contrast to how Deputy Chief Gutierrez treated Plaintiff, he did not denigrate Sgt. Uribe for seeking a transfer on or about January 3, 2024.

126.   Additionally, Police Officer David Morales successfully obtained a transfer from Unit 214 after he encountered certain personality conflicts with Lt. Duckorn and Deputy Chief Gutierrez.

127.   In contrast to how Deputy Chief Gutierrez treated Plaintiff, he did not denigrate Officer Morales for seeking a transfer on or about January 18, 2024.

128.   Defendant Deputy Chief Gutierrez castigated her for being "soft" by "letting a bunch of girls get to her". In making this comment to Plaintiff, Defendant Gutierrez implied that she needed to act more like a man and not react to office politics.

129.   Deputy Chief Guitierrez's comments and actions were discriminatory in nature – where he was treating Plaintiff differently because of her gender and the manner in which she responded to her tormentors. As discussed below i, in contrast to how he treated male officers who sought and obtained transfers to avoid office politics, Deputy Chief Gutierrez caused Plaintiff to be transferred to a less desirable shift.

130.   As a direct and proximate result of this unlawful conduct and disregard for Plaintiff's federally protected rights and dignity, Plaintiff has lost and will continue to suffer damages, such as mental anguish and humiliation as well as anxiety, and loss of income and benefits. Further, Plaintiff has suffered reputational harm as a result of the above outlined misconduct.

19

WHEREFORE, Plaintiff seeks the following relief against Defendant City of Chicago:

     a.  Declaratory relief – in the form of a declaration from this Court that one or all of the Defendants violated Plaintiff's rights to equal protection;

     b.  Compensatory damages;

     c.  Compensation for emotional distress;

     d.  Punitive damages; and

     e.  Legal fees and costs.

### Count II – Violations of Title VII

### Unlawful Retaliation in Response to Plaintiff Raising Complaints About Discriminatory Treatment

131.   Plaintiff reasserts and realleges Paragraphs 1-120 in this Count as if fully stated.

132.   Title VII of the Civil Rights Act of 1964, as amended, prohibits retaliation for an employee's complaints about what they reasonably perceive as discrimination in the workplace.

133.   As set forth above, Plaintiff engaged in protected conduct but was subjected to unlawful retaliation by the Defendants.

134.   The Defendants willfully and improperly denied Plaintiff equal job terms and workplace conditions in direct retaliation because of her complaints and objections about sex discrimination and the creation of a hostile work environment.

135.   As a direct and proximate result of this unlawful conduct and disregard for Plaintiff's federally protected rights and dignity, Plaintiff has lost and will continue to suffer damages, such as mental anguish and humiliation as well as anxiety, and loss of income and benefits. Further, Plaintiff has suffered reputational harm as a result of the above outlined misconduct.

WHEREFORE, Plaintiff seeks the following relief against Defendant City of Chicago:

      a.  Declaratory relief – in the form of a declaration from this Court that one or all of the Defendants violated Plaintiff's rights to equal protection;

      b.  Compensatory damages;

      c.  Compensation for emotional distress;

      d.  Punitive damages; and

      e. Legal fees and costs.

### Count III – Violations of Title VII Based

### Unlawful Retaliation in Response to Plaintiff Filing a Charge of Discrimination With the EEOC

136.   Plaintiff reasserts and realleges Paragraphs 1-120 in this Count as if fully stated.

137.   Title VII of the Civil Rights Act of 1964, as amended, prohibits retaliation for an employee's complaints about what they reasonably perceive as discrimination in the workplace.

138.   As set forth above, Plaintiff engaged in protected conduct but was subjected to unlawful retaliation by the Defendants.

139.   The Defendants willfully and improperly denied Plaintiff equal job terms and workplace conditions in direct retaliation because of her complaints and objections about sex discrimination and the creation of a hostile work environment.

140.   As a direct and proximate result of this unlawful conduct and disregard for Plaintiff's federally protected rights and dignity, Plaintiff has lost and will continue to suffer damages, such as mental anguish and humiliation as well as anxiety, and loss of income and benefits.

141.    Further, Plaintiff has suffered reputational harm as a result of the above outlined misconduct.

WHEREFORE, Plaintiff seeks the following relief against Defendant City of Chicago:

a.  Declaratory relief – in the form of a declaration from this Court that one or all of the Defendants violated Plaintiff's rights to equal protection;

b.  Compensatory damages;

c.  Compensation for emotional distress;

d.  Punitive damages; and

e.  Legal fees and costs.

### Count IV

### Denial of Equal Protection - Based Upon Plaintiff's Gender

142.    Plaintiff reasserts and realleges Paragraphs 1-120 in this Count as if fully stated.

143.    The actions of Defendants Deputy Chief Adnardo Gutierrez, James Kurth, and Commander Melvin W. Branch *denied Plaintiff equal protection of the law* because of her sex where they applied differing standards to how they responded to Plaintiff being targeted by her co-workers.

144.    For example, as discussed above, Deputy Chief Gutierrez castigated her for being "soft for letting a bunch of girls get to her" and indicated that she needed to act *more like a man.*

145.    In downplaying Plaintiff's concerns, Deputy Chief Gutierrez treated Plaintiff worse that similarly situated male police officers who have been dragged into office-politics where Deputy Chief Gutierrez expected Plaintiff to argue and verbally push back at her tormentors – as is a normal occurrence among male police officers.

146. Defendant Guitierrez's comments were discriminatory in nature – where he was treating Plaintiff differently because of her gender and the manner in which she responded to her tormentors.

147. Defendants Kurth and Branch treated Plaintiff differently because of her gender (female) where they perceived her as acting too soft by allowing her tormentors to get to her.

148. Just like Defendant Deputy Chief Gutierrez, Defendants Kurth and Branch indicated that the mistreatment that Plaintiff complained about was something that *would not have bothered a thicker-skinned male employee.*

149. In addressing Plaintiff's mistreatment as something that was not important, Defendants Kurth and Branch treated Plaintiff differently that similarly situated male employees.

150. Plaintiff returned to the 3rd District effective February 1, 2024.

151. After returning to the 003rd District, Plaintiff's workhours were changed – where she was reassigned from the second watch (which involved working from 6:00 am to 2:30 pm or from 7:00 a.m. to 3:30 pm) to the third watch - which involved working from 1:00 to 10:30 pm – a less desirable time period.

152. This unlawful transfer was initiated by Commander Melvin W. Branch at the direction of Deputy Chief Adnardo Gutierrez.

153. The third watch is a less desirable time-slot because it resulted in Plaintiff being unable to see her young child during the daytime hours. The third watch is also a more dangerous timeslot given that takes place during the evening hours.

154. As a direct and proximate result of this unlawful conduct and disregard for Plaintiff's federally protected rights and dignity, Plaintiff has lost and will continue to suffer damages, such as mental anguish and humiliation as well as anxiety, and loss

of income and benefits. Further, Plaintiff has suffered reputational harm as a result of the above outlined misconduct.

WHEREFORE, Plaintiff seeks the following relief against Defendants Deputy Chief Adnardo Gutierrez, Sgt. Jame Kurth and Commander Melvin W. Branch:

a. Declaratory relief – in the form of a declaration from this Court that one or all of the Defendants violated Plaintiff's rights to equal protection;

b. Compensatory damages;

c. Compensation for emotional distress;

d. Punitive damages; and

e. Legal fees and costs.

## Count V

### Violations of the Illinois Whistle Blower Act Against All Defendants

155. Plaintiff reasserts and realleges Paragraphs 1-120 in this Count as if fully stated.

156. The Illinois Whistle Blower Act ("IWA") was created "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers." *Huang v. Fluidmesh Networks, LLC*, 2017 WL 3034672, *3 (N.D. Ill. July 18, 2017) (emphasis added).

157. "[T]he purpose of the Whistleblower Act is to protect statutorily defined employees who report violations of state or federal laws, rules, or regulations 'because the reported wrongful conduct or unsafe condition affected the health, safety[,] or welfare of Illinois residents as a whole.'" *Larsen v. Provena Hospitals*, 2015 IL App (4th) 140255, ¶ 47 (quoting *Sutherland v. Norfolk Southern Ry. Co.*, 356 Ill. App. 3d 620, 627 (2005)).

158.    Section 15(b) of the IWA prohibits an employer from retaliating against an employee who discloses information to a government agency that the employee reasonably believes is a violation of any federal or state law, rule or regulation.

159.    Section 20.1 of the IWA makes it unlawful for officials to take materially adverse actions against an employee because of the employee's disclosure or attempt to disclose matter of involving a public concern.

160.    As set forth above, in February of 2024, Defendant Sgt. Kurth, in conjunction with Defendant Deputy Chief Adnardo Gutierrez and Daniel O'Brien (a so called Police Legal Office II"), initiated a bogus Internal Affairs investigation against Plaintiff which *falsely* claimed that Plaintiff had "forged Deputy Chief Adnardo Gutierrez's signature to a To-From Subject Report on her own 'Detail Request', without permission to do so."

161.    To the contrary, this was a *false charge* because Plaintiff was given permission to sign Defendant Deputy Chief Adnardo Gutierrez's name to the To From Subject Report where Defendant Gutierrez actually approved *and physically signed* the Detail Request which authorized Plaintiff's transfer.

162.    Thereafter, on or about February 2, 2024, Plaintiff filed an internal affairs grievance complaining about this false charge was retaliatory in nature.

163.    As a result of Plaintiff filing of the internal affairs complaint, which is a matter of public concern, on July 23, 2024, Plaintiff was stripped of her police powers which involved her being ordered to turn in her handgun, badge and police-issued hat.

164.    As described above, each of the Defendants violated Section 15(b) and Section 20.1 of the Whistle Blower Act by retaliating against Plaintiff as a result of her filing an internal affair charge where her charge complained that she had been investigated for a bogus and false charge of forgery.

25

165. As described above, Defendants Deputy Chief Adnardo Gutierrez, Sgt. Anthony R. Strazzante, and Commander Melvin W. Branch violated Section 15(b) of the Whistle Blower Act in response to Plaintiff filing an internal affair charge where her charge complained that she had been investigated for a bogus and false charge of forgery.

166. As a direct and proximate result of this unlawful conduct and disregard for Plaintiff's protected rights and reputation by Defendants Deputy Chief Adnardo Gutierrez, Sgt. James Kurth Sgt. Anthony R. Strazzante, and Commander Melvin W. Branch, Plaintiff has lost and will continue to suffer damages, such as mental anguish and humiliation as well as anxiety, and loss of income and benefits. Further, Plaintiff has suffered reputational harm as a result of the above outlined misconduct.

167. Individual liability exists under the IWA. *See, Strzykalski v. Bd. of Educ.*, 2024 U.S. Dist. LEXIS 24873, *7, 2024 WL 580012 (N.D. Ill. Feb. 13, 2024) ("I disagree with defendants and adhere to my interpretation, as stated in *Principe v. Vill. of Melrose Park,* No. 20 CV 1545, 2020 U.S. Dist. LEXIS 148761, 2020 WL 4815908, at *5-6 (N.D. Ill. Aug. 18, 2020), that an individual acting within the scope of their express or implied authority on behalf of an entity considered to be an employer is subject to liability under the statute. Strzykalski adequately alleges that District 161 is an employer under the act and that Goebel and McDermott were acting within the scope of their express or implied authority on behalf of District 161.").

WHEREFORE, Plaintiff seeks the following relief against all of the Defendants:

    a. Declaratory relief – in the form of a declaration from this Court that one or all of the Defendants violated Plaintiff's rights as provided by the IWA;

    b. Compensatory damages;

    c. Compensation for emotional distress;
    d. Punitive damages; and

e. Legal fees and costs.

## Count VI

## Defamation Against Defendants Gutierrez and Strazzante

168. Plaintiff reasserts and realleges Paragraphs 1-120 in this Count as if fully stated.

169. Defendants Deputy Chief Adnardo Gutierrez and Sgt. Anthony R. Strazzante, defamed Plaintiff by *falsely* claiming that she falsified Defendant Gutierrez's signature on the cover letter of Plaintiff's transfer request and by causing this false charge to be communicated to people employed by the Chicago Police Department.

170. As of the actions of Defendants Gutierrez and Strazzante, Plaintiff has lost and will continue to suffer damages, such as mental anguish and humiliation as well as anxiety, and loss of income and benefits.

171. As a result of the actions of Defendants Gutierrez and Strazzante, Plaintiff was stripped of her police powers and lost income as a result of their actions.

172. Further, Plaintiff has suffered reputational harm as a result of the above outlined misconduct.

173. Defendants Gutierrez and Strazzante are not entitled to a qualified privilege where their actions were retaliatory in nature and their conduct was not part of any legitimate internal affairs investigation. "[E]ven where a qualified privilege exists, the privilege can be abused, leading to tort liability." *Freiburger v. Timmerman*, 2014 U.S. Dist. LEXIS 151093, at *5-6 (N.D. Ill. Oct. 23, 2014.

174. Whether a privilege was abused is a question of fact. *Pompa v. Swanson*, 2013 IL App (2d) 120911, 990 N.E.2d 314, 321 (2d Dist. 2013). (2d Dist. 2013). In particular, "the scope of protection afforded by a qualified privilege can be exceeded and the privilege thereby defeated in circumstances where 1) false statements are made with

malice or a reckless disregard for their truth, 2) the statements are not limited in scope, or 3) publication is not limited to proper parties.").

175.   "[T]he question of whether the defendant's statements were made with malice is one of fact for the jury to decide." *Zych v. Tucker*, 363 Ill.App.3d 831, 834-35, 844 N.E.2d 1004, 300 Ill. Dec. 561 (1st Dist. 2006). "Even if the Court were to consider whether the qualified privilege applies, the application of the privilege necessarily raises factual questions that are not properly resolved at this stage of ligation." *Lacien v. Phonak, LLC*, 2011 U.S. Dist. LEXIS 139768, *11-12 (N.D. Ill. 2011).

176.   In particular, outside of the context of any internal affairs investigation, Defendants Gutierrez and Strazzante *falsely* reported to other third-parties that Plaintiff forged Defendant Gutierrez's signature on the cover letter of Plaintiff's transfer request without Defendant Gutierrez's consent and by causing this false charge to be communicated outside of the Chicago Police Department.

WHEREFORE, Plaintiff seeks the following relief against Defendants Deputy Chief Adnardo Gutierrez and Sgt. Anthony R. Strazzante:

    a.  Declaratory relief – in the form of a declaration from this Court that one or all of the Defendants Gutierrez and Strazzante defamed Plaintiff;

    b.  Compensatory damages;

    c.  Compensation for emotional distress;

    d.  Punitive damages; and

    e.  Legal fees and costs.


## **Jury Demand**

Plaintiff demands a jury trial for all applicable causes of action.

Respectfully submitted,

*/s/ James C. Vlahakis*

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300 Chicago
IL 60602
312-766-0511
 jamesv@vlahakislaw.com

*Counsel for Plaintiff*

Dated: July 22, 2025.

29