**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

YESENIA GALVAN,

        Plaintiff,

        v.

CITY OF CHICAGO, DEPUTY CHIEF ADNARDO GUTIERREZ, SGT. ANTHONY R. STRAZZANTE, SGT. JAMES KURTH, and COMMANDER MELVIN W. BRANCH,

        Defendants.

No. 24 CV 3854

Judge Georgia N. Alexakis

**MEMORANDUM OPINION AND ORDER**

Plaintiff Yesenia Galvan is a patrol officer with the Chicago Police Department ("the Department"). She alleges that she became unwillingly embroiled in an interpersonal dispute between coworkers after transferring to a new unit and that, as a result, the City of Chicago and several individual officers discriminated against her on the basis of her sex and then retaliated against her for reporting that discrimination. In May 2024, Galvan sued the City and individual officers, alleging that her treatment violated Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment, *see* 42 U.S.C. § 1983, and Illinois whistleblower and defamation laws.

After assessing the viability of Galvan's federal claims, this Court dismissed Galvan's first amended complaint without prejudice. [68]. It now considers a motion to dismiss Galvan's second amended complaint. [73]. For the following reasons, the motion to dismiss is granted in part and denied in part.

## I. Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but it need not credit legal conclusions or "threadbare recitals" supported by "mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018). "At the motion to dismiss stage for failure to state a claim, we test the sufficiency of the complaint, not the merits of the case." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 885 (7th Cir. 2022). A well-pleaded complaint may proceed even if the plaintiff is unlikely to prevail in recovery. *Id.* at 881.

## II. Analysis

The Court assumes familiarity with its earlier opinion, which sets out the pertinent factual allegations in detail. [68]. It references those allegations—and any new ones that appear in the second amended complaint—where relevant to the analysis that follows.

### A. Sex Discrimination under Title VII and 14th Amendment (Counts I and IV)

"A complaint alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir.

2014) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)); *see also Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1007 (7th Cir. 2018) (establishing that courts evaluate § 1983 claims for employment discrimination under the same standards as claims brought under Title VII). While "a complaint must contain something more than a general recitation of the elements of the claim," there is a "minimal pleading standard for simple claims of race and sex discrimination." *Tamayo*, 526 F.3d at 1084 (citing *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781–82 (7th Cir. 2007)).

To meet the pleading standard for a claim of sex discrimination under either Title VII or § 1983, Galvan must allege "that (1) she was a member of a protected class, (2) she performed reasonably on the job in line with the employer's legitimate expectations, (3) she was subjected to an adverse employment action, and (4) similarly situated employees of the opposite sex were treated more favorably." *Lauderdale v. Illinois Dep't of Hum. Servs.*, 876 F.3d 904, 910 (7th Cir. 2017) (numerals added); [68] at 10. Defendants do not contest the first two elements. They argue, however, that Galvan has failed to plausibly allege that she suffered an adverse employment because of her sex. [74] at 6. The Court disagrees.

First, Galvan has successfully alleged that she suffered an adverse employment action when Deputy Chief Adnardo Gutierrez, a named defendant, revoked Galvan's transfer to the 7th District and instead only agreed to approve Galvan's transfer to the 3rd District. [69] ¶¶ 63–64, 68, 75, 77–78. "[A] Title VII plaintiff 'must show some harm respecting an identifiable term or condition or

3

employment. What the plaintiff does not have to show … is that the harm incurred was significant. Or serious, or substantial.'" *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336–37 (7th Cir. 2024) (concluding that any of plaintiff's grievances constituted some harm, including deferred job training, denial of preferred vacation requests, and assignment to shifts impacting childrearing) (quoting *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024)). According to Galvan, being transferred to the 3rd District rather than the 7th District "would cause her to lose her administrative position and possibly return to patrol work in a high-crime area." [69] ¶ 77. That is enough to state a Title VII discrimination claim. *See Muldrow*, 601 U.S. at 359 (a police officer being transferred out of her preferred division constituted harm under Title VII, although her salary, rank, and promotion opportunities remained unchanged).

Second, Galvan has sufficiently alleged that she suffered this adverse employment because of her sex. Galvan's first amended complaint did not include a comparator allegation. [68] at 14. But Galvan's second amended complaint heeds the Court's earlier advice by alleging that defendants treated similarly situated male employees more favorably. [69] ¶¶ 79–82. In particular, Galvan alleges that two male colleagues received leave to transfer to avoid intra-office personal conflicts without experiencing the frictions that Galvan bumped up against. *Id*. According to Galvan, Gutierrez "agreed to a transfer request" initiated by one of these male colleagues and the second male colleague "successfully obtained a transfer" to another district. *Id*. ¶¶ 79, 81. Galvan further alleges that "in contrast to how he treated male officers

who sought and obtained transfers to avoid office politics, Deputy Chief Gutierrez caused Plaintiff to be transferred to a less desirable shift." *Id.* ¶ 83. Based on these allegations, the Court reasonably infers that Gutierrez permitted the two male officers to transfer to their desired districts in contrast to his decision to revoke Galvan's transfer to the 7th District and to permit only her transfer to the 3rd District.

Additionally, Galvan has pointed to Gutierrez's comments calling Galvan "soft for letting a bunch of girls get to her" and suggesting that Galvan should have acted "more like a man" in dealing with interpersonal conflict rather than seeking a transfer. *See, e.g.*, [69] ¶¶ 33, 51, 68, 78. As the Court previously explained, these comments do not rise to an adverse employment action in and of themselves. [68] at 10–13. But in her second amended complaint, Galvan pairs the allegations about Gutierrez's comments with new allegations regarding male colleagues who were not "denigrate[d]" by Gutierrez when they sought transfers following inter-office strife. [69] ¶¶ 79–82. "A remark can raise an inference of discrimination when it was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008) (cleaned up). In this more fulsome context, Galvan's allegations about Gutierrez's belittling comments toward her—made when Galvan sought a transfer to the 7th District, when Gutierrez revoked his initial approval of that transfer, and when Gutierrez only acquiesced to Galvan's transfer to the 3rd

District—further support the inference that Gutierrez treated Galvan more harshly for her conflicts with coworkers due to her sex.

Defendants fault Galvan for not outright alleging that her male colleagues' "schedules were changed after their transfer." [74] at 8; *see also id.* at 9; [78] at 3–4. But this criticism of Galvan's Title VII discrimination claim, as articulated in her second amended complaint, takes too narrow a view of the adverse employment actions at issue. Certainly, Galvan's complaint includes numerous allegations concerning her subsequent assignment to the third watch, and the Court will address those allegations in the context of Galvan's Title VII retaliation claims. When considering a motion to dismiss for failure to state a claim, though, the Court must draw all permissible inferences in the plaintiff's favor. *Boucher*, 880 F.3d at 365. Under that standard, the Court would be remiss not to recognize that Galvan's transfer to the 3rd District rather than the 7th District separately constitutes an adverse employment action. Indeed, defendants have not argued otherwise.

Defendants also contend that they are entitled to qualified immunity as they could not have understood their actions as illegal. [74] at 12. But a finding of qualified immunity is highly fact-dependent and best analyzed after discovery, not resolved at the motion to dismiss stage. *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001).

Finally, with respect to Galvan's § 1983 claim, defendants argue that Galvan has not plausibly alleged individual liability by Gutierrez and two other defendants: Commander Melvin Branch and Sergeant James Kurth. [74] at 9–11. For the reasons it has already given, the Court does not credit this argument as it pertains to

Gutierrez. According to Galvan's second amended complaint, Gutierrez was personally involved in revoking her transfer to the 7th District and approving only her transfer to the 3rd District. [69] ¶¶ 64, 68, 75, 77–78. Galvan has not alleged, however, that defendants Branch and Kurth played any role in her transfer to the less-desired district. Based on the Court's analysis above, this transfer is the only adverse employment action that Galvan has plausibly alleged for purposes of her sex discrimination claim. Because she has not sufficiently alleged that Branch and Kurth personally participated in the transfer decision, her § 1983 claim against them fails.[1]

For these reasons, the Court grants in part and denies in part defendants' motion to dismiss Counts I and IV in Galvan's second amended complaint. Count I may proceed; Count IV may proceed only with respect to Gutierrez.

### B.  Retaliation Under Title VII (Counts II and III)

Next, Galvan pleads that defendants retaliated against her in violation of Title VII. "Pleading a retaliation claim under Title VII requires the plaintiff to 'allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result.'" *Carlson*, 758 F. 3d at 828 (quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)). A plaintiff must plausibly allege "a causal link between the protected activity or status and the adverse action." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (citing *Ortiz v. Werner Enterprises Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016)).

---

[1] In addition, Galvan did not address this argument in her opposition brief; she has therefore waived any argument against the dismissal of defendants Branch and Kurth from Count IV.

Under Title VII, "'[p]rotected activity' is 'some step in opposition to a form of discrimination that the statute prohibits.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (quoting *O'Leary v. Accretive Health, Inc.*, 957 F.3d 625, 631 (7th Cir. 2011)). Fairly construed, Galvan's complaint alleges two forms of protected activity: filing internal affairs complaints about the sex discrimination she allegedly experienced within the police department (the basis for Count II) and filing a charge of discrimination with the EEOC (the basis of Count III). Galvan filed her internal complaints on February 2 and 7, 2024. [69] ¶¶ 96–97. Galvan's complaint offers multiple dates for EEOC activity: the filing of a charge of discrimination on February 7, 2024, *id.* ¶ 16; *see also* [74] at 15, n.2; [68] at 7; the receipt of a right to sue letter on February 11, 2024, [69] ¶ 17; the filing of another charge of discrimination on November 11, 2024, *id.* ¶ 117; and the receipt of another right to sue letter on December 10, 2024, *id.* ¶ 118.[2]

With respect to alleging an adverse employment action for her retaliation claims, Galvan points to the following events: her assignment to the third watch, the filing of two internal affairs complaints against her, and the decision to strip her of her police powers, which impacted Galvan's ability to earn overtime among the removal of other privileges. [69] ¶¶ 86, 107. Although Galvan does not specify on what

---

[2] Galvan's complaint also makes two passing references to the May 2024 filing of this lawsuit. *See* [69] ¶¶ 18, 107. Given the manner in which Galvan has chosen to frame her retaliation claims in ¶¶ 131–41, and the fact that Galvan does not make any argument in her opposition brief concerning this lawsuit as a form of protected activity for purposes of her retaliation claims, *see* [77] at 6–12, the Court does not understand Galvan to be alleging that this lawsuit constitutes protected activity in her second amended complaint. It resolves the motion to dismiss Galvan's retaliation claims accordingly.

date she was assigned to the third watch, the Court understands from her second amended complaint that she received this assignment sometime in early February 2024: after her February 1, 2024 transfer to the 3rd District but before February 7, 2024. *Id.* ¶¶ 88, 97 (alleging that on February 7, 2024, plaintiff initiated her second internal affairs complaint because "she *had been* assigned to the third watch") (emphasis added). One of the internal affairs complaints against Galvan was filed on February 2, 2024, *id.* ¶ 93, and a second one was filed on May 7, 2024, *id.* ¶ 103. The first of these internal affairs complaints concerned Galvan's alleged forgery of Gutierrez's signature on a transfer-related document, *id.* ¶ 93; the second alleged that Galvan only initiated her own internal affairs complaints in retaliation for the forgery-related internal complaint filed against her, *id.* ¶ 103. Galvan was stripped of her police powers on July 23, 2024. *Id.* ¶ 107.

The Court starts with Galvan's allegations regarding her EEOC activity. While "no bright-line timing rule can be used to decide whether a retaliation claim is plausible" and other factors may be relevant, a lengthy period between the protected action and the alleged adverse employment action can render causation implausible and cause a complaint to fail. *Carlson*, 758 F.3d at 828 ("[A] retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible."). Here, the EEOC activity that took place in November and December 2024 could not have caused the earlier adverse employment actions to which Galvan points. Likewise, Galvan's February 7, 2024 filing of an EEOC charge post-dates both

the February 2, 2024 initiation of an internal affairs investigation into Galvan's alleged forgery and Galvan's assignment to the third watch. While the EEOC issued its right to sue letter shortly after this investigation began and shortly after Galvan's third-watch assignment, to establish causation based on temporal proximity, courts focus on the date the charge was filed—not the fact that an EEOC investigation was pending at a given time. *See Schultze v. White*, 127 F. App'x 212, 219 (7th Cir. 2005) (two-year gap between filing of charge and termination not enough to establish causation, even though complaints were pending at the time of termination). And while Galvan first reported discrimination to the EEOC on January 25, 2024, [69] ¶¶ 9, 84, 89, the earliest any defendant would have learned of her initial EEOC complaint would have been February 7, 2024, when Galvan actually signed the charge of discrimination, *id.* ¶¶ 10, 16.

That leaves the Court to explore any connection between Galvan's EEOC activity in early February 2024 and the May 2024 initiation of the second internal affairs investigation into Galvan as well as the July 2024 decision to strip Galvan of her police powers. The Court concludes that these events are too temporally distant to allow for a reasonable inference of causation. As the Court previously wrote: "While 'suspicious timing' is the sort of circumstantial evidence that can potentially 'supply the causal link,' the months-long gap between the protected activity and the [adverse action] here does not by itself support an inference of retaliation." [68] at 16–17 (citing *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012) ("[E]vidence regarding suspicious timing, without more, is generally insufficient to support a reasonable

inference of retaliation."), and *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (47-day gap between protected activity and adverse action did not allow inference of causation)). Moreover, with respect to the filing of the May 2024 internal complaint filed against her, Galvan specifically alleges that this action was taken in retaliation for her own internal complaints, not the EEOC activity. *See* [69] ¶ 103.[3]

The Court now turns to Galvan's claim that she was retaliated against because of the internal affairs complaints that she filed within the police department. In her second amended complaint, Galvan alleges that she learned from Sergeant Jasmin Tucker, another leadership figure in the police department, that Deputy Commander Branch told Sergeant Tucker that Galvan was "assigned to the third watch in response to [Galvan's] complaints of being targeted by her fellow officers." *Id.* ¶¶ 98–99. This allegation—coupled with the temporal proximity between the first of Galvan's internal affairs complaints and her assignment to the third watch—creates a more than plausible inference that Galvan's assignment to the third watch was in retaliation for protected activity. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013) (plaintiff properly pleaded retaliation by setting forth statutorily protected activity and adverse employment action suffered as a result, without proving the connection). Defendants challenge the veracity of these allegations, [74]

---

[3] Galvan does allege that Sergeant Anthony R. Strazzante, another named defendant, knew of her EEOC activity when he interviewed her on March 8, 2024 in connection with one of the internal affairs complaints that Galvan filed in February 2024. *Id.* ¶¶ 101–02. This allegation, however, cannot support a retaliation claim in connection with Galvan's EEOC activity. Galvan does not allege that Strazzante's interviews only occurred as a result of her earlier EEOC activity. Instead, the more reasonable inference to draw is that the interview was the natural byproduct of an internal complaint that Galvan had filed.

11

at 6, n.1, but at this juncture, the Court must accept them as true. *See Iqbal*, 556 U.S. at 678.

For these reasons, the Court dismisses Count III, but permits plaintiff to proceed on Count II. Because Galvan already has had one opportunity to amend her retaliation claim in light of the Court's guidance, *see* [68] at 20, Count III is dismissed with prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).

### C.    Illinois Whistleblower Act

Galvan asserts a claim under the Illinois Whistleblower Act ("IWA"), alleging that the defendants stripped her of her police powers in July 2024 in retaliation for filing internal affairs complaints, her filing of this lawsuit, and comments she made during a May 21, 2024 internal affairs interview conducted by Sergeant Strazzante. [69] ¶¶ 107, 163–65. Defendants move to dismiss this claim on multiple grounds, although the Court does not need to address all of them before finding itself in agreement with defendants.

The Illinois Whistleblower Act creates a private right of action for employees to enforce §§ 15(b) and 20, both of which disallow employers from retaliating against whistleblowers. 740 ILCS 174/15(b); 20. Section 15(b) protects employees from retaliation resulting from reporting employer activities that, in the employee's good-faith estimation, violate the law or pose a danger to employees, public health, or safety. *Id*. Section 20 protects employees from retaliation for refusing to participate in such violative activities. *Id*.

12

Galvan has not alleged any facts to support a plausible inference of retaliation with regard to the stripping of her police powers. She simply sets out the protected actions she took and the fact that—somewhere between two to five months later— her police powers were stripped without providing any facts or reasoning that could support an inference of causality. *E.g.*, [69] ¶ 107. The Court is not required to credit "mere conclusory statements." *Iqbal*, 556 U.S. at 678. Nor, for the reasons already discussed, can a distance of multiple months support a plea of retaliation where there is no other fact alleged that can support retaliatory intent. *See supra* at 10–11.

Count V is therefore dismissed, although this dismissal is without prejudice. The Court's earlier opinion did not address Galvan's IWA claim, so she has not yet had the opportunity to try to amend her claim with benefit of such guidance. *See Runnion*, 786 F.3d at 519.

### D.    Defamation

Finally, Galvan presents a claim that defendants Gutierrez and Strazzante defamed her by falsely accusing her of forging Gutierrez's signature when she signed his name to a cover letter without his express permission.

To claim defamation under Illinois law, Galvan must plausibly allege that (1) defendants made a false statement about her, (2) there was an unprivileged publication of the statement to a third party, and (3) Galvan suffered damages as a result. *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 532 (7th Cir. 2009) (citing *Seith v. Chicago Sun–Times, Inc.*, 371 Ill. App. 3d 124, 308 (2007)). A claimant can allege the third element, damages, through either of two pathways: the claimant can allege facts supporting the defamatory meaning of

defendants' comments for a claim of defamation per quod, but damages are assumed in a claim of defamation per se. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003).

Galvan has not pleaded any damages stemming from the alleged defamation, particularly given the applicable heightened pleading standard. Fed. R. Civ. P. 9(g); *see Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613–14 (7th Cir. 2013). In her response to defendants' motion to dismiss, Galvan directs the Court to evaluate her defamation claim as a per se claim. [77] at 18. A plaintiff can bring a claim of defamation per se by alleging that defendants made a false statement about her that falls into one of five limited categories. *Muzikowski*, 322 F.3d at 924 (citing *Bryson v. News Am. Publications, Inc.*, 174 Ill. 2d 77, 88 (1996)). As argued by Galvan, the categories of statements relevant here are those falsely claiming that a person has committed a criminal offense or "want of integrity in the discharge of duties of public office." *Muzikowski*, 322 F.3d at 924; [77] at 21.

But Galvan's complaint falls short of even the lesser standard required for a claim of defamation per se. First, nowhere in her complaint does she plausibly allege that defendants accused her of committing the crime of forgery rather than investigating forgery in a more general sense. "In determining whether a statement alleged to be defamatory per se imputes commission of a criminal offense, if the actual words spoken do not by themselves denote criminal (or unethical) conduct and in common usage have a more flexible and broader meaning than that ascribed by plaintiff, then, as a matter of law, the words are nonactionable as defamation *per se*."

14

*Darovec Mktg. Grp., Inc. v. Bio-Genics, Inc.*, 42 F. Supp. 2d 810, 816 (N.D. Ill. 1999) (cleaned up). In addition, conducting a bona fide investigation into accused wrongdoing is not defamation. *See Freiburger v. Timmerman*, No. 13 CV 8174, 2014 WL 5423068 at *2 (N.D. Ill. Oct. 23, 2014) (a qualified privilege from defamation liability exists in the context of "an employer's internal investigation of alleged misconduct by its employees.").

Separately, Galvan does not plausibly set forth facts showing that the defendants publicized their accusation. In her response to the defendants' motion to dismiss, Galvan states that she met that burden by averring at the very end of her complaint that defendants Gutierrez and Strazzante defamed her by causing their false forgery charge "to be communicated to people employed by the Chicago Police Department." [77] at 19 (citing [69] ¶ 169) (emphasis removed). That statement does not allege or imply that defendants communicated their accusation beyond what was necessary to conduct the internal investigation, and the complaint contains no other indication that defendants told anyone else about the signature.

Count VI is dismissed, although for the same reasons the Court has provided concerning its dismissal of Count V, the dismissal of Count VI is without prejudice.

## III.    Conclusion

For the foregoing reasons, defendants' motion to dismiss [73] is granted in part and denied in part.

Plaintiff may proceed on Counts I, II, and IV in accordance with this opinion. Count III is dismissed with prejudice. Galvan may refile an amended complaint as to Counts V and VI if she can cure the deficiencies identified above while still complying

with her obligations under Federal Rule of Civil Procedure 11. *See Runnion*, 786 F.3d at 519–20 ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). Any amended complaint is due on or before 4/22/2026. If plaintiff does not submit an amended complaint by 4/22/2026, the dismissal of Counts V and VI will automatically convert to a dismissal with prejudice.

This matter is otherwise referred to the assigned Magistrate Judge for discovery scheduling and supervision and to conduct a settlement conference, as necessary.

ENTER:

Georgia N. Alexakis
United States District Judge

Date: 4/8/2026

16