UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YESENIA GALVAN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, DEPUTY CHIEF ADNARDO GUTIERREZ, SGT. ANTHONY R. STRAZZANTE, SGT. JAMES KURTH, and COMMANDER MELVIN W. BRANCH,<br><br>Defendants. | No. 24 CV 3854<br><br>Judge Georgia N. Alexakis |

## ORDER

Before the Court is defendants' motion to dismiss Counts V and VI of plaintiff Galvan's third amended complaint. [93]. For the following reasons, the Court grants the motion in part and denies it in part. Galvan's Count V (violation of the Illinois Whistleblower Act) is dismissed with prejudice. Galvan may proceed on Count VI (common law defamation).

## STATEMENT

The Court assumes familiarity with its opinions addressing defendants' motions to dismiss Galvan's first and second amended complaints for failure to state a claim. [68], [81]. Galvan's third amended complaint adds limited allegations relating to Counts V and VI. [90] ¶¶ 162, 174–78.

***Illinois Whistleblower Act (Count V)***

The Court previously dismissed Galvan's claim under the Illinois Whistleblower Act, providing the following reasoning:

> Galvan [had] not alleged any facts to support a plausible inference of retaliation with regard to the stripping of her police powers. She simply set[] out the protected actions she took and the fact that—somewhere between two to five months later—her police powers were stripped without providing any facts or reasoning that could support an inference of causality … The Court is not required to credit "mere conclusory statements." … Nor … can a distance of multiple months support a plea

> of retaliation where there is no other fact alleged that can support retaliatory intent.

[81] at 13 (internal citations omitted). The Court then referred back to its analysis regarding Title VII retaliation, where it concluded that an allegation of an adverse action taken months after a protected action cannot support a claim of retaliation without any other facts that would make retaliation more likely. *Id.* at 11–12 (citing *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012) ("[E]vidence regarding suspicious timing, without more, is generally insufficient to support a reasonable inference of retaliation."), and *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (47-day gap between protected activity and adverse action did not allow inference of causation)).

Galvan's third amended complaint does not cure this deficiency. It adds a new paragraph to its section on Count V, alleging that

> as a result of Plaintiff filing this lawsuit on May 10, 2024, which is a matter of public concern, on July 23, 2024 (approximately two months after the City of Chicago and the individual defendants were served with summons), Defendants … stripped [Galvan] of her police powers which involved her being ordered to turn in her handgun, badge and police-issued hat.

[90] ¶ 162. This new allegation once again describes a months-long gap between protected action and adverse action, with no other facts raising a reasonable inference of retaliatory intent. Because Galvan has not alleged any additional facts that point towards retaliation, Count V is dismissed.[1]

Because Galvan already has had an opportunity to amend her Illinois Whistleblower Act claim in light of the Court's guidance, *see* [81] at 13, the dismissal is with prejudice and without leave to amend. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015); *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014, 1023 (7th Cir. 2022).

***Defamation (Count VI)***

In contrast to Count V, Galvan's third amended complaint provides more new material with respect to Count VI, her defamation claim. [90] ¶¶ 174–78. Her

---

[1] Because Galvan has not pleaded facts stating a claim under either Section 15(b) or Section 20.1 the Illinois Whistleblower Act, the Court does not reach the parties' arguments about whether Section 20.1 of the Illinois Whistleblower Act supports a private right of action.

complaint, bolstered with these new allegations, suffices to plead a claim of defamation per se.

To claim defamation under Illinois law, Galvan must plausibly allege that (1) defendants made a false statement about her, (2) there was an unprivileged publication of the statement to a third party, and (3) Galvan suffered damages as a result. *Giant Screen Sports v. Can. Imperial Bank of Com.*, 553 F.3d 527, 532 (7th Cir. 2009) (citing *Seith v. Chi. Sun–Times, Inc.*, 371 Ill. App. 3d 124, 308 (2007)).

A plaintiff can allege the third element, damages, through either of two pathways: the plaintiff can allege facts supporting the defamatory meaning of defendants' comments for a claim of defamation per quod, but damages are assumed in a claim of defamation per se. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). Galvan asserts a claim of defamation per se. [102] at 10. A plaintiff can bring a claim of defamation per se by alleging that defendants made a false statement about her that falls into one of five limited categories. *Muzikowski*, 322 F.3d at 924 (citing *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 88 (1996)). There are two relevant categories suggested by Galvan's allegations: false statements that a person has committed a criminal offense, and false statements averring "want of integrity in the discharge of duties of public office." *Id.*; [77] at 21; *see also* [102] at 14 (arguing that "accusing a police officer of forgery has ser[i]ous repercussions").

The Court explained in its prior opinion why Galvan had not stated a claim of defamation per se under the theory that defendants Gutierrez and Strazzante accused her of the crime of forgery. [81] at 14–15. It wrote:

> In determining whether a statement alleged to be defamatory per se imputes commission of a criminal offense, if the actual words spoken do not by themselves denote criminal (or unethical) conduct and in common usage have a more flexible and broader meaning than that ascribed by plaintiff, then, as a matter of law, the words are nonactionable as defamation per se.

*Id.* (quoting *Darovec Mktg. Grp., Inc. v. Bio-Genics, Inc.*, 42 F. Supp. 2d 810, 816 (N.D. Ill. 1999)) (cleaned up).

In her third amended complaint, Galvan adds that "Defendants Gutierrez and Strazzante essentially accused Plaintiff of committing the crime of forgery – where both Defendants Gutierrez and Strazzante did not simply state that Plaintiff was being investigated for committing the crime of forgery." [90] ¶ 178. However, the third amended complaint does not add additional *facts* alleging that Gutierrez and Strazzante's statement "essentially accused Plaintiff of committing the crime of forgery" as opposed to forgery in a broader sense. Without any new facts, the additional allegation of a criminal connotation is conclusory. *See Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (a court need not credit a complaint's legal conclusions or "threadbare recitals" supported by "mere conclusory statements"); *id.* (plaintiff must allege sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Indeed, the facts Galvan has pleaded favor an inference that Gutierrez was discussing forgery as a violation of police department policy, not a violation of the criminal code. While conduct violating a workplace policy can be serious, it does not follow that it is criminal. *Cf.* [102] at 12–13 (arguing that defendants' initiating an investigation, bringing internal affairs charges, and stripping Galvan of her police powers indicate that they accused Galvan of the crime of forgery).

The second category of defamation per se implicated by Galvan's complaint encompasses statements falsely portraying want of integrity in the discharge of duties of public office. *See Muzikowski*, 322 F.3d at 924. The Court previously dismissed this avenue as well because Galvan's second amended complaint did not plausibly allege that the allegedly defamatory statement was publicized beyond the scope of a bona fide internal investigation. [81] at 15. The third amended complaint adds facts alleging that Gutierrez and Strazzante's comment was made to 50 sergeants-in-training outside the context of an investigation into the purported forgery. [90] ¶¶ 174–75. That additional fact plausibly alleges that the statement was publicized, satisfying the second element of a defamation claim. *See Giant Screen Sports*, 553 F.3d at 532.

Galvan had another hurdle to clear: public officials must allege actual malice to state a claim for defamation. *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 280 (1964). Galvan is a public official in this context: the per se category at issue regards the existence of a public office and, under Illinois law, "[a] police officer is a public official." *Lee v. Radulovic*, No. 94 C 930, 1994 WL 384010, at *6 (N.D. Ill. July 20, 1994) (citing *Reed v. Northwestern Publishing Co.,* 530 N.E.2d 474, 480 (Ill. 1988), *cert. denied,* 489 U.S. 1067 (1989)); *see also Vicars-Duncan v. Tactikos*, 16 N.E.3d 935, 941 (Ill. App. 4th Dist. 2014) (Illinois courts consider police officers public officials under *New York Times Co.* because their duties are "'governmental' in character and highly charged with the public interest") (citations omitted).

A statement is made with actual malice if it is made "with knowledge that [the alleged defamatory statement] was false or with reckless disregard of whether it was false or not." *N.Y. Times Co.*, 376 U.S. at 280. At the motion to dismiss stage, therefore, a public official bringing a defamation claim "must plausibly allege 'that the defendant in fact entertained serious doubts as to the truth of his publication, or actually had a high degree of awareness of probable falsity.'" *Bondar v. Gannett Co., Inc*, 24-cv-11387, 2026 WL 2494614, at *3 (N.D. Ill. Aug. 25, 2026) (quoting *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018)) (cleaned up).

Reading Galvan's third amended complaint in the light most favorable to her and drawing all plausible inferences in her favor, Galvan has pleaded facts that allow an inference of actual malice. She has alleged that, while she signed Gutierrez's name without his express permission, she did so based on a mistaken belief of implied permission that she formed pursuant to a widespread policy of officers signing paperwork on their superiors' behalf when the superior had agreed to the ultimate aim of the document. [90] ¶ 71. Galvan alleges that the cover letter on which she signed Gutierrez's name had no additional information beyond the request that Gutierrez had approved and personally signed. *Id.* ¶¶ 65–66, 94–95. While "forgery" can have a broader connotation than the criminal act of forgery, an accusation of forgery necessarily carries an accusation of deceit. *See Forge*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/forge (last visited Sep. 29, 2026) (defining "forge" as "to make or imitate falsely especially with intent to defraud … counterfeit"). Because she alleged that the department had a commonplace practice of officers signing paperwork on behalf of superiors such as Gutierrez, Galvan has plausibly alleged that Gutierrez either knew that Galvan did not mean to deceive or defraud through signing his name to the cover letter, or he accused her of such deceit with a high degree of awareness that such an accusation was probably false. *See Bondar*, 2026 WL 2494614 at *3. Galvan has thus pleaded actual malice.

An accusation carrying overtones of deceptiveness and dishonesty implies want of integrity. The per se category of want of integrity in the discharge of duties of public office presumes that damages apply, fulfilling the third element of Galvan's defamation claim. *See Muzikowski*, 322 F.3d at 924. The Court therefore declines to dismiss Count VI.

## CONCLUSION

For the reasons stated, defendants' motion to dismiss plaintiff's third amended complaint is granted in part and denied in part. [93]. Count V is dismissed with prejudice, and Count VI may proceed.

ENTER:

Georgia N. Alexakis
United States District Judge

Date: September 29, 2026